# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| Clara Bullard Conrad, | ) |
| | ) C/A. No. 9:20-cv-1811-RMG |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER AND OPINION** |
| | ) |
| Frank P. Benson MD; Melody A. Griffin; | ) |
| Atlantic Capital Bancshares, Inc. d/b/a/ | ) |
| Atlantic Capital Bank, N.A.; Mortgage | ) |
| Electronic Registration Systems, Inc.; | ) |
| and Expedia Group d/b/a/ Vrbo, | ) |
| | ) |
| Defendants. | ) |
| | ) |

This matter is before the Court on Defendant Expedia Group d/b/a Vrbo's (hereinafter "HomeAway")[1] motion to dismiss (Dkt. No. 13). For the reasons set forth below, the Court grants the motion.

## I.     Background

On November 9, 2017 Plaintiff Clara Bullard Conrad's son-in-law, non-party John Foley, allegedly "entered into a rental contract with Defendant [HomeAway] for the" real property located at 85 Sunset Boulevard, Beaufort, South Carolina (the "Subject Property"). (Dkt. No. 1-1 ¶ 7).[2] Defendants Frank P. Benson and Melody A. Griffin allegedly owned the Subject Property.

---

[1] Defendant Expedia Group d/b/a Vrbo contends that Plaintiff incorrectly named "Expedia Group d/b/a/ Vrbo" as a defendant in this lawsuit instead of "HomeAway.com, Inc." (Dkt. No. 13-1 at 4). Plaintiff admits that "Expedia Group d/b/a/ Vrbo" was named in error but "asserts the correct name of the defendant should be 'Expedia, Inc., d/b/a HomeAway, Inc. a/k/a Vrbo.'" (Dkt. No. 14 at 1 n.1). For simplicity's sake, the Court refers to named Defendant Expedia Group d/b/a/ Vrbo as "HomeAway."

[2] To support the contention HomeAway rented Foley the Subject Property, the complaint cites to an exhibit attached therein. Said exhibit is not a rental contract, however, but a copy of an email exchange between Foley and Defendant Frank Benson concerning the Subject Property's availability. *See* Exhibit A, (Dkt. No. 1 at 15-16). In her opposition to HomeAway's motion to

(*Id.* ¶¶ 2-3).  On April 29, 2018, as Plaintiff was walking across a walkway at the Subject Property, she "tripped on a rotted, loose plank and fell." (*Id.* ¶ 15).  Plaintiff was injured, (*Id.* ¶ 17), and initiated this lawsuit on April 13, 2020.[3]  Plaintiff brings causes of action for: (1) premises liability as against Benson and Griffin; (2) negligence as against Benson and Griffin; (3) premises liability as against HomeAway; (4) negligence as against HomeAway; and (5) negligent supervision as against all Defendants.

On July 7, 2020 HomeAway filed a motion to dismiss for lack of personal jurisdiction. (Dkt. Nos. 13, 15), which Plaintiff opposes, (Dkt. No. 14).  HomeAway submitted affidavits from three employees in support of its motion.  Charlotte Davis, Senior Manager for North American Traveler Marketing at HomeAway, affirms that: "HomeAway operates an online marketplace via certain websites, including Vrbo.com, that allow third-party property owners and managers domestically and internationally to list their properties for short-term rent and connect with individuals who are seeking to rent a house or apartment, referred to as 'Travelers.'" (Dkt. No. 13-2 at 3).  Davis affirms said "websites are not directed at Travelers (including Plaintiff) from any particular state, including South Carolina" and that "HomeAway makes its websites available domestically and internationally – generally, to anyone who seeks out those websites on the internet, regardless of where they live." (*Id.*).  Lee Huberman, Product Manager for HomeAway, affirms that "HomeAway does not own or operate any properties and is not a party to a rental transaction between the third-party property owners and/or managers and the Travelers." (Dkt. No.

---

dismiss, Plaintiff admits that HomeAway did not rent Foley the Subject Property. (Dkt. No. 14 at 2) ("On November 9, 2017, the Plaintiff's son-in-law, John Foley, entered into a rental contract through HomeAway with Defendant Benson and Defendant Griffin for the" Subject Property.)
[3] On May 8, 2020, Benson and Griffin removed this action to federal court. (Dkt. No. 1). Because Plaintiff had not yet served the remaining defendants at this time, their consent was not necessary for Benson and Griffin to effectuate removal. (*Id.* at 5).

13-3 at 3). Brittany Miers, Business Paralegal for the Americas at HomeAway, affirms that "HomeAway *does not* own, operate, manage or control any properties and is not a party to rental transactions between the third-party property owners and/or managers and the Travelers – including the" Subject Property. (Dkt. No. 13-4 at 4). Miers explains: "HomeAway acts as an online marketplace that enables third-party property owners and/or managers to list their properties and potential Travelers to search for and book those properties and engage in rental transactions directly with those property owners and/or managers. Property owners and managers are solely responsible for all listing content and upload their own property descriptions and photographs to the online marketplace." (*Id.*). Miers continues that "[o]nce a reservation is made, the Member and Traveler may communicate" with each other via a messaging space on the HomeAway website called "the reservation dashboard." *See* (Dkt. No. 18-1 at 5). Miers also affirms that HomeAway is a Delaware corporation headquartered in Texas which does not employee individuals nor maintain bank or investment accounts in South Carolina. (Dkt. No. 13-4 at 4-5).

**II.    Legal Standard**

When personal jurisdiction is challenged, the burden is on the plaintiff to establish jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When resolved on written submissions, the plaintiff must make a "*prima facie* showing of a sufficient jurisdictional basis." *Id.* The plaintiff's showing must be based on facts set forth in the record, taken in the light most favorable to the plaintiff. *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992); *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 404–05 (D.S.C. 2012) (internal quotation and alteration marks omitted). However, a court "need not credit conclusory allegations or draw farfetched inferences." *Sonoco*, 877 F. Supp. 2d at 405 (citations omitted).

To meet their burden, a plaintiff must show (1) that South Carolina's long-arm statute authorizes jurisdiction, and (2) that the exercise of personal jurisdiction complies with

constitutional due process requirements. *See, e.g. Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Since South Carolina's long-arm statute extends to the constitutional limits of due process, the only inquiry is whether due process requirements are met. *ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 328 (D.S.C. 1999); *S. Plastics Co. v. S. Commerce Bank*, 423 S.E.2d 128 (S.C. 1992).

Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). This can be met by showing either general or specific personal jurisdiction. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002) (citations omitted). To assert general jurisdiction, a defendant's contacts must be "so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754 (2014) (citations omitted). For a corporation, that traditionally renders them subject to general jurisdiction in its state of incorporation or principal place of business. *Id.* at 137.

To determine whether specific jurisdiction exists, the Court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (citations omitted). In other words, a defendant must have "minimum contacts" with the forum, the claim must arise from those contacts, and personal jurisdiction must be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 – 476 (1985). Courts evaluate the reasonableness by considering "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in

obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering substantive social policies." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994). "Minimum contacts" and "reasonableness" are not independent requirements; rather, they are both aspects of due process, and thus "considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 477.

### III.    Discussion

The Court does not have general jurisdiction over HomeAway. HomeAway is not incorporated in South Carolina, nor does it have its principal place of business in South Carolina. Plaintiff has not presented any other facts to indicate that HomeAway is "essentially at home" in South Carolina. Therefore, general jurisdiction does not exist over HomeAway.

As to specific jurisdiction, the Court finds the Fourth Circuit's recent decision *Fidrych v. Marriott International, Inc.*, 952 F.3d 124 (4th Cir. 2020) instructive. In *Fidrych*, a South Carolina resident sued the hotel chain Marriott for injuries suffered during a visit at a franchise hotel in Italy. *Id.* at 129. Marriott was a foreign corporation registered to do business in South Carolina. *Id.* at 128. Marriott's website permitted online booking and was accessible in South Carolina. *Id.* at 129. When reserving a room online, the website required guests to provide their address and allowed guests to use a drop-down menu to select their place of residence. *Id.* This drop-down menu included South Carolina, as well as every other state in the country and every other country in world. *Id.* Of the 6,200 hotels in the Marriott system, ninety were in South Carolina and none of those ninety were owned by Marriott, with sixty-three being franchisees and the remaining twenty-seven being licensed or managed by Marriott. *Id.* at 134.

5

After declining to find that Marriott was subject to general jurisdiction in South Carolina, *Id.* at 134, the Fourth Circuit addressed whether Marriott was subject to specific jurisdiction. The Court noted that while "Marriott's business activity in South Carolina is not insignificant, as it franchises, licenses, or manages ninety hotels in the state[,] those activities . . . have nothing to do with the claims asserted by the Plaintiffs in this action." *Id.* at 139. The court then analyzed "the only other action by Marriott . . . arguably relevant" to the jurisdictional inquiry: "[the] operation of its website." The Fourth Circuit observed:

> While Marriott obviously uses its website to engage in commercial transactions, the website does not target South Carolina residents for commercial transactions any more than it targets any other state. Instead of targeting any particular state, the website makes itself available to any one who seeks it out, regardless of where they live. In our view, the mere fact that the website is accessible in a given state does not mean that Marriott is targeting its activities at that state.

*Id.* at 139-41 (citing *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) (rejecting claim of specific jurisdiction where defendant did not direct its activities at South Carolina but instead "focused its activities more generally on customers located throughout the United States and Canada without focusing on and targeting South Carolina")).

The court then considered, and rejected, the plaintiffs' argument that specific jurisdiction over Marriott existed on the basis that Marriott's website was "interactive." *See id.* at 141 ("Plaintiffs point out, however, the website is interactive, not passive."); *Id.* at 142 (noting "Plaintiffs focus much of their attention on the fact that the website includes South Carolina as an option in the drop-down menu used by customers to select their state of residence when making reservations"). The court acknowledged that the "interactivity of a website is a jurisdictionally relevant fact." *Id.* (citing *ALS Scan, Inc.*, 293 F.3d at 713-14). In *ALS Scan, Inc.* the Fourth Circuit formulated principles for "determining when it can be deemed that an out-of-state citizen, through

6

electronic contacts, has conceptually 'entered' the State via the Internet for jurisdictional purposes." *Id.* (quoting *ALS Scan, Inc.*, 293 F.3d at 713). In *ALS Scan, Inc.*, the court held that "[a] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc.*, 293 F.3d at 714.[4]

Applying *ALS Scan, Inc.*, the *Fidrych* court rejected plaintiffs' arguments that the "level of interactivity of a website like Marriott's is . . . enough, on its own, to make the website a sufficient basis to support the exercise of specific jurisdiction." *Id.* 142 (noting Marriott's website fell into *Zippo*'s "middle ground"). The court reasoned:

> The interactivity of the website is relatively limited—it permits customers to input their travel dates to view available hotels and to book rooms online, which requires them to provide personal and financial information. The website is not used to create a continuing, back-and-forth relationship between Marriott and the website user; it is used to facilitate the making of a one-off hotel reservation. The website is thus in many ways the digital equivalent of a toll-free telephone number, providing a simple, cost-free way for customers to contact the company.

---

[4] *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir.2002) expressly adopted and adapted the model for Internet-based specific jurisdiction developed in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). *Zippo* articulated a "sliding-scale" approach to personal jurisdiction in cases arising from electronic commerce. *Zippo* held that when a defendant runs an interactive site, through which he "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet," he can properly be haled into the courts of that foreign jurisdiction. *Zippo*, 952 F. Supp. at 1124. By contrast, if the defendant's site is passive, merely making information available, the site cannot render him subject to specific personal jurisdiction in a foreign court. *Id.* In the middle ground are semi-interactive websites for which "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs." *Id.* 1124.

*Id.* at 142-43 (warning that if the court were to find personal jurisdiction proper, "every hotel operator would be subject to personal jurisdiction in the state of residence of every guest who used the hotel's website to make the reservation").

Applying *Fidrych* and *ALS Scan, Inc.* to the instant matter, the Court finds it lacks specific jurisdiction over HomeAway. HomeAway has shown, and Plaintiff does not substantively dispute, that HomeAway neither targets South Carolina in particular nor leases properties directly to South Carolina residents, acting instead "as an online marketplace that enables third-party property owners and/or managers to list their properties and potential Travelers to search for and book those properties and engage in rental transactions directly with those property owners." Miers Affidavit, (Dkt. No. 13-4 ¶ 7); *see* Plaintiff's Opposition, (Dkt. No. 14 at 11) ("While it is true that HomeAway does not specifically target Travelers from in any particular state, including South Carolina, it provides a continuing platform for the Member and the Traveler to communicate regarding the rental and the terms of the lease"); (*Id.* at 2) ("Plaintiff's son-in-law, John Foley, entered into a rental contract . . . with Defendant Benson and Defendant Griffin for [the Subject Property]."). HomeAway's website is indistinguishable—jurisdictionally speaking—from Marriott's in *Fidrych*. Like Marriott's website, HomeAway's website is "accessible to all but targeted at no one in particular," allowing users "to input their travel dates to view available [properties]," "to book [rentals] online," and "require[ing] [users] to provide personal and financial information" for payment. *See Fidrych*, 952 F.3d at 142 (finding this "level of interactivity . . . not enough, on its own, to make the website a sufficient basis to support the exercise of specific jurisdiction"). The fact HomeAway might be a "continuing platform" whereby third parties, such as Foley and Benson, discuss rentals is, despite Plaintiff's contentions to the contrary, *see, e.g.* (Dkt. No. 14 at 23), irrelevant to the question of whether *HomeAway* purposefully directed

8

electronic activity toward South Carolina with the intent of engaging in business, *ALS Scan, Inc.*, 293 F.3d at 714. *See Underwriters at Lloyd's, London v. Dollar Rent-A-Car, Inc.*, 2008 U.S. Dist. LEXIS 68177, at *30 (D.S.C. 2008) (holding that the unilateral activity of a third party who claims some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state and noting that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State"). *Cf. United Cutlery Corp. v. NFZ, Inc.*, No. CIV CCB-03-1723, 2003 WL 22851946, at *4 (D. Md. Dec. 1, 2003) (concluding that sales through Internet auction sites such as "eBay" and "Yahoo!" did not demonstrate purposeful availment because "[a]lthough [such] websites were interactive and designed for the purpose of selling products to participating users, [the defendant seller] exercised . . . [no] control over the audience they targeted").  In sum, "when [HomeAway] set up its generally accessible, semi-interactive Internet website, it did not thereby direct electronic activity into [South Carolina] with the manifest intent of engaging in business or other interactions within that state in particular." *Carefirst of Maryland, Inc.*, 334 F.3d at 401.  Accordingly, the Court lacks specific personal jurisdiction over HomeAway. *See id.*; *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352–53 (4th Cir. 2020) ("Regardless of where on the sliding scale a defendant's web-based activity may fall, however, '[w]ith respect to specific jurisdiction, the touchstone remains that an out-of-state person have engaged in some activity *purposefully directed* toward the forum state . . . creating a substantial connection with the forum state.'") (citing *ESAB Group, Inc.*, 126 F.3d at 625); *see also Shamsuddin v. Vitamin Research Prod.*, 346 F. Supp. 2d 804, 814 (D. Md. 2004) (finding no personal jurisdiction over generally accessible interactive website that accepted credit card payments from Maryland customers and sold infringing products into Maryland noting that "although [defendant's] decision to sell its products over the Internet

9

was a 'purposeful' one, that decision alone cannot demonstrate that [defendant] took actions purposefully directed toward Maryland specifically").

### IV.     Conclusion

For the reasons above, the Court **GRANTS** Defendant Expedia Group d/b/a Vrbo's motion to dismiss (Dkt. No. 13).

**AND IT IS SO ORDERED.**

                                                s/ Richard Mark Gergel
                                                United States District Court Judge

August 13, 2020
Charleston, South Carolina